**BIRMINGHAM FIRE FIGHTERS ASSOCIATION 117, et al.,**
**Plaintiffs,**

**Wilks Class, Plaintiffs–Appellants,**

**v.**

**JEFFERSON COUNTY, Ben L. Erdreich, Thomas W. Gloor, Chriss H. Doss, Jefferson County Personnel Board, et al., Defendants–Appellees,**

**No. 01–10544.**

United States Court of Appeals,
Eleventh Circuit.

May 6, 2002.

Raymond P. Fitzpatrick, Jr., Gary L. Brown, Fitzpatrick, Cooper & Clark, LLP, Birmingham, AL, for Plaintiffs–Appellants.

Albert L. Jordan, Wallace, Jordan, Ratliff & Brandt, L.L.C., Charlie D. Waldrep,

Virginia Michelle Obradovic, Gorham & Waldrep, P.C., Scott B. Smith, Anne R. Yuengert, Bradley, Arant, Rose & White, Birmingham, AL, Andrea Picciotti–Bayer, Rebecca K. Troth, Dept, of Justice/ App. Section/ Civ. Rights Div., Washington, DC, Rowan D. Wilson, Cravath, Swaine & Moore, New York City, for Defendants–Appellees.

Before CARNES and FAY, Circuit Judges, and MARTIN *, District Judge.

CARNES, Circuit Judge:

This appeal is another installment in the long-running story involving the consent decrees governing the hiring and promotion procedures of the City of Birmingham. The first quarter of a century of the litigation is summarized in *Ensley Branch N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1552 (11th Cir.1994) (*Ensley II* ). *See also Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 280 F.3d 1289 (11th Cir. 2002)(our most recent opinion stemming from the case). Rather than fill up pages repeating what we have said before, we will assume familiarity with the background set out in our earlier opinions, especially the 1994 *Ensley II* one, and focus here on the more recent events that relate to this appeal.

## I. BACKGROUND

Our 1994 decision required the district court to modify the original decree so that the City would be ordered to implement "valid job selection procedures forthwith." *Ensley II*, 31 F.3d at 1552. (The decision required the same of the Personnel Board insofar as its job selection procedures were concerned, *see id.*, but the Board and the decree aimed at it is not involved in this appeal, so we will confine our discussion to the City decree.) The result on remand was a debate over exactly how the decree should be modified to comply with our decision. The Wilks class (consisting of non-black males) moved the district court to modify the decree to require the City to conduct job validation studies for all of its selection procedures, even those for which no adverse impact was found. The United States, the City, and the Martin/Bryant class (consisting of black persons and non-black females), however, took the position that our 1994 decision required that the City be ordered to validate as job related only those procedures which have an adverse impact.

The district court decided that the United States, the City, and the Martin/Bryant class were right and the Wilks class was wrong about what our *Ensley II* decision required. In December of 1995, the district court issued an order modifying the City decree in response to our decision. One of the key terms of that modification order, and the only one relevant to this appeal, required the City to put in place job selection procedures that "either: (1) have no adverse impact on the basis of race or sex . . .; or (2) be job related for the job classification(s) in question and consistent with business necessity, in accordance with Title VII . . . ." [1]

* Honorable Beverly B. Martin, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. The term "job related" means job related and business necessitated, which requires— where tests are used to rank job applicants according to scores and to select only the highest test scorers for job placement—a showing of a statistically significant correlation between applicants' test scores and their later job performance. *Ensley II*, 31 F.3d at 1554–55; *Ensley Branch, N.A.A.C.P. v. Seibels*, 616 F.2d 812, 816–22 (5th Cir.1980) (*Ensley I* ). " 'Validation' is the process of determining whether a selection device is sufficiently

No one appealed that or any other aspect of the 1995 modification order. Instead, as required by another part of the order, the parties exchanged information so that compliance with the decree as modified could be monitored. By agreement of the parties, several hundred job classifications were dropped from further consideration under the decrees for one reason or another. From 1996 until May of 1998, the only filings relevant to this appeal were those of both the Wilks class and the Martin/Bryant class, consisting of reports filed in 1996 identifying jobs with selection procedures they contended had an adverse impact based on race or sex. Then, in May of 1998, the Wilks class filed a motion seeking to have the City held in contempt on the ground that its promotional practices relating to the police department violated the modified decree. After conducting an evidentiary hearing, the district court found that no adverse impact had been shown from the promotion procedures for any positions in the police department except those for police captain. The district court ordered the City to validate the promotion selection procedures for that one position.

Two years later in November of 2000—nearly five years after the 1995 modification order had been entered—the Wilks class filed a motion asking the district court to modify the decree further so that it would require the City to validate the selection procedures governing hiring and promotion for all positions, not just those procedures identified as having disparate impact. The Wilks class presented no evidence that those job selection procedures which had not been found to have an adverse impact were anything other than race-neutral, although that is what the class suspects. As it explained to the district court, "[s]imply requiring the avoidance of adverse impact is tantamount to an

job-related to comply with the requirements

order to continue a program of racial balancing." The Wilks Class stated that "the experience of the past five years confirms that the 1995 City Order is inadequate to meet the Eleventh Circuit's finding that new race-neutral City selection procedures are necessary."

In December of 2000, the district court summarily denied the Wilks' Class motion to modify the City decree any further. It is that order the class has appealed.

## II. DISCUSSION

■ The opening, and as it turns out closing, issue in this appeal is one of appellate jurisdiction. We have jurisdiction under 28 U.S.C. § 1292(a)(1) over orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...." For these purposes, consent decrees are injunctions. *See United States v. City of Miami,* 664 F.2d 435, 445 (5th Cir.1981). If one of the parties is the United States, as is the case here, all of the parties have sixty days in which to file an appeal of an order modifying or refusing to modify a consent decree or other type of injunction. *See* Fed. R.App. P. 4(a)(1)(B).

■ If a party whose motion for an injunction, or to dissolve or modify an injunction, is denied fails to file an appeal within the prescribed time-frame, it may not file a successive motion requesting the same relief "simply to revisit the initial injunction decision or resurrect an expired time for appeal." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3924.2 (2d ed.1996). Our decision on that point came in *Winfield v. St. Joe Paper Co.,* 663 F.2d 1031, 1032 (11th Cir.1981), where we held that we lacked jurisdiction over an appeal of an interlocutory order denying a

of Title VII." *Ensley I,* 616 F.2d at 816 n. 11.

motion for a preliminary injunction, because the motion was identical to one that the district court had denied two years earlier and from which no appeal had been taken. The latest motion we characterized as simply "a refiling of a motion which had been denied two years earlier," and we noted there was a "total absence of additional factual submissions to the record or even allegations of changed circumstances since the previous district court ruling." *Id.* at 1032. We explained that finding appellate jurisdiction in those circumstances circumvents the policy of Rule 4 of the Federal Rules of Appellate Procedure, which requires in the interests of efficiency and finality that a timely appeal be filed. *See id.*

 The same is true here. The issue of whether the City should be permitted to use job selection procedures that have not been job-validated, if those procedures do not have an adverse impact on race or sex, was raised and fought out by the parties after our 1994 remand. That issue was decided by the district court, and its decision about the issue is embodied in the key terms of the court's December 1995 modification order. The Wilks Class could have had the decision of that issue reviewed by appealing the modification order then. It did not. A party cannot undo its failure to timely appeal an earlier order by the simple expedient of asking the district court to undo that order years later. The time limits of Rule 4 have more steel in them than that.

 It is said that there is an exception to the rule against appealing from a successive motion if there are changed circumstances, new evidence, or a change in the law. *See* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3924.2 (2d ed.1996). We do not doubt that, provided the new circumstances, evidence, or law is important enough that the latest

motion is a viable being in its own right instead of merely a re-packaging in new garb of the corpse of an old motion in an attempt to resurrect it. To protect the integrity of the rule that prohibits using successive motions to extend the time for appeal, at a minimum there should be a close nexus between the change in circumstances, evidence, or law and the issues raised on appeal. The exception should be limited so that any appeal from the failure to modify further a decree or injunction starts with the proposition that the original, unappealed order was correct when entered. Only if the appeal contends that changes over time mean the district court abused its discretion by failing to modify an order that was not an abuse of discretion when entered should the appeal be permitted, and it should be permitted only to the extent necessary to consider whether the changed circumstances, evidence, or law requires modification of the order which is presumed to have been correct when issued. By restricting the exception to those tight confines, we can ensure that the claim of intervening change is not used as a ruse to circumvent the time requirements for filing an appeal.

The exception, as properly confined, does not apply in this case. The thrust of the Wilks Class' contention in this appeal is that the district court's 1995 modification order misinterpreted our 1994 *Ensley II* decision. The class argues that our decision mandated that each selection procedure be shown to be job related, while the district court's 1995 modification order requires that only those procedures having an adverse impact be job related. The meaning of our decision is not subject to evidence, so there is no new evidence on the issue. Nor has there been any material change in circumstances or new legal developments relating to the issue. If the district court's 1995 modification order is wrong, it was wrong from the get go, and

the Wilks Class should have filed a notice of appeal within sixty days after that order was entered six years ago.

The Wilks Class points to the fact that since the 1995 order was entered the City has not created valid selection procedures for every job classification, and argues that delay is a changed circumstance which justifies excepting this appeal from the general rule and relieving the class from its failure to appeal the 1995 order. That argument simply ignores the central and undisputed point that the 1995 order did not require the City to validate all of its job selection procedures, only those that have an adverse impact.

The Wilks Class also seems to contend that the City's delay in complying with the 1995 order by adopting job selection procedures that either have no adverse impact or are job related is a circumstance that requires further modification of the order to restrict the City to just one of those two alternative means of compliance. If the class is arguing that, its argument is nonsensical because the premises point away from the conclusion. It makes no sense to say that delay in compliance requires a reduction in the number of ways in which compliance can be shown. If it has taken the City an inordinately long time to comply with the 1995 order, restricting the means of compliance will not speed up the process but just the contrary. The Wilks Class could not win by arguing that delay in compliance requires making compliance more difficult, and it does not really advance that as an argument on the merits. Instead, the class offers that suggestion of changed circumstance—years have passed and the City has not complied—to excuse the lateness of the appeal, and then shifts on the merits to the argument that the 1995 order has been wrong all along in permitting the City two avenues of compliance instead of just one. There is no logical nexus between the claimed change, which is the delay in complying through either of two avenues, and the argument that it was legally wrong to permit one of those avenues to begin with. That argument could just as easily and just as forcefully have been raised in an appeal filed within sixty days after entry of the 1995 order.

Finally, we come to the Wilks Class' last and most unusual reason for not timely appealing the 1995 order. Counsel for the class says that in view of all the time and effort that our 1994 *Ensley II* decision took, and given our heavy docket, he was reluctant to bring us another appeal in the same case so soon after the first one. He did not immediately seek review of the 1995 order, he says, in part because he did not want to burden us with another appeal on the heels of the earlier burdensome one. We are touched, but not moved. Rule 4's requirements for timely filing an appeal admit of no exception for kindness to the judiciary. Even if there were such an exception, it would not apply here. During the years since the 1995 order was entered, the district court and the parties have labored to implement it secure in the knowledge that the key terms of the order were not in jeopardy of being overturned on appeal. It would not be kind to the district court or to the other parties in this case to upset their justifiable reliance, which was born of the failure of the Wilks Class to appeal the order and was nurtured by the clear requirements of Rule 4.

### III. CONCLUSION

The appeal is DISMISSED for lack of jurisdiction.