DECISION
{¶ 1} Appellant, MSI Regency Village, Ltd., d.b.a. Regency Village ("MSI"), appeals from the decision of the director of the Ohio Department of Health ("ODH") withdrawing a certificate of need ("CON"), imposing a fine, and placing a three-year moratorium on appellant applying for a new CON. The issues on appeal center on questions of statutory interpretation, specifically if ODH had the authority to review certain activities undertaken by MSI and, if so, whether the penalties were imposed in *Page 2 
accordance with law. The facts of the case are well set out in the report and recommendation of the hearing examiner, and are largely undisputed.
 {¶ 2} MSI was granted a CON on November 1, 2005 to replace 100 long-term care beds from an existing facility to a new building to be constructed on the same campus. As part of the CON application process, Ohio Adm. Code 3701-12-23.2(C) requires an applicant to provide documentation of a "feasible plan to care for the residents served in the beds being replaced or relocated until the new beds are operational and thereafter. The application shall state whether those residents will be admitted to the new beds and the procedure for facilitating availability of the beds to the residents."
 {¶ 3} MSI's plan called for the construction to take place in two phases. The plan would allow current MSI residents to remain in their residences on the site until the replacement building was completed, and then they could move in.
 {¶ 4} MSI was unable to obtain conventional financing for the project. On December 1, 2005, MSI met with the Columbus HUD team to discuss financing. MSI learned that it could not receive a HUD-insured loan guarantee if it proceeded with the original two phase construction plan.
 {¶ 5} In order to complete the project in a single phase, MSI realized that it would have to demolish the existing facility and build the new long-term care facility on the site of the old one. MSI modified the original plan for the care of the current residents by closing the nursing home and relocating the residents to other nursing home facilities of their choice for the duration of the construction. The residents would be permitted to move into the new facility upon its opening. The modification conflicted with the *Page 3 
statement in the CON application as part of the feasible plan for residents during the construction phase.
 {¶ 6} Most of the residents moved after notification that the nursing home was closing, but approximately ten residents either did not want to relocate or their families and/or guardians had not responded to the first notification. MSI then issued 30-day notices of their intent to transfer them. Some of the notices were erroneously titled "Eviction." The last resident moved on January 24, 2006, and MSI closed the next day. The patient relocation occurred before financing was obtained and before construction started.
 {¶ 7} Upon hearing of complaints about the relocation from some residents, on January 6, 2006, ODH informed MSI that a failure to comply with the original plan could initiate procedures to withdraw the CON. MSI responded by means of a letter dated January 10, 2006, explaining why the action was taken and requesting a "determination of nonreviewability."
 {¶ 8} The director of ODH concluded that the relocation of the residents was a "reviewable activity" within the context of R.C. 3702.51(S)(5) and 3702.53(C). He found that MSI had violated R.C. 3702.53(C) because it did not carry out the reviewable activity in "substantial accordance" with the approved application for the CON. The director withdrew the CON and imposed a civil penalty of $207,355, and a three-year ban on applying for any new CON. MSI appealed all three of the director's actions. The parties proceeded to an R.C. Chapter 119
hearing. The hearing examiner recommended that the director affirm all the previous actions, which he did. This appeal followed.
 {¶ 9} On appeal, MSI raises a single assignment of error as follows: *Page 4 
The Adjudication Order of the Director of Health is not supported by reliable, probative, and substantial evidence and is not in accordance with law.
 {¶ 10} In considering an appeal from an order of the director of ODH, R.C. 3702.60(F)(3) sets forth the standard of review to be applied by this court and provides, in pertinent part: The court shall affirm the director's order if it finds, upon consideration of the entire record * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order.
 {¶ 11} As a reviewing court, we must give due deference to the administrative resolution of evidentiary conflicts and, therefore, analysis of whether the director's decision is supported by the evidence is essentially a question of the absence or presence of the requisite quantum of evidence. In the Matter of: Application of Manor Care ofParma, Franklin App. No. 05AP-398, 2005-Ohio-5703, at ¶ 9.
 {¶ 12} In interpreting an agency's statute or rule, a reviewing court must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command. Id. at ¶ 16. In other words, in order to sustain an agency's application of a statutory term, a reviewing court need not find the agency's construction of a rule is the only reasonable one or even that it is the result the court would have reached. Id.
 {¶ 13} Our threshold inquiry must be whether the director erred in deciding that the relocation of the residents was a reviewable activity. R.C. 3702.51(S)(5) defines a reviewable activity as: *Page 5 
 Any change in the health services, bed capacity, or site, or any other failure to conduct a reviewable activity in substantial accordance with the approved application for which a certificate of need concerning long-term care beds was granted, if the change is made within five years after the implementation of the reviewable activity for which the certificate was granted[.]
 {¶ 14} The parties agree that the relocation of the residents was not a change in the health services, bed capacity, or site, and therefore the catchall phrase, "or any other failure to conduct a reviewable activity in substantial accordance" must be the focus of our inquiry. It is readily apparent that there exists a problem of circularity in that the statute defines the term "reviewable activity" by using the same term in the definition.
 {¶ 15} The parties also dispute whether the five-year limitation runs from the implementation of the reviewable activity under consideration or the implementation of the reviewable activity for which the CON was granted — in this case whether the time runs from the time of the relocation of the residents or the time of the implementation of the project to replace 100 long-term care beds. The parties appear to disagree as to what the term "implementation" means. Moreover, the parties disagree upon the meaning of the term "substantial accordance." "Substantial accordance" is not defined in the statutes or rules, nor is there a policy that explains it.
 {¶ 16} The agency's position as to how this statute should be applied may be summarized as follows: A reviewable activity is the failure to conduct the relocation of the residents in substantial compliance with the approved CON application if the relocation is made within five years after the implementation of the relocation. In addition, the relocation of the residents was a substantial, material deviation from the express *Page 6 
representation as to the plan of care made in the application, and therefore the relocation of the residents was not conducted in substantial accordance with the application.
 {¶ 17} MSI's position on this issue may be summarized as follows: Removal of the residents is not a reviewable activity because it occurred before implementation of the project, and when considering the project as a whole, the relocation was an insubstantial departure from the overall plan. Substantial accordance cannot mean absolute compliance and must mean something less than complete compliance.
 {¶ 18} The hearing examiner explained the issue as follows:
 The hearing officer understands Ohio Revised Code section 3702.51(S)(5) to define "reviewable activity" as a substantial change to what was approved within the certificate of need application, and it is the implementation of the reviewable activity, the substantial change to the approved application, that begins the five-year period as expressed within this statutory provision. This statutory language does not refer to the implementation of the project; this statute refers to the implementation of reviewable activity, and defines reviewable activity as a failure to conduct a reviewable activity in substantial accordance with the approved application.
Report and Recommendation, at 31.
 {¶ 19} While all of these positions have some feasibility, we are troubled by the portion of the definition that states "if the change is made within five years after the implementation of the reviewable activity for which the certificate was granted." (Emphasis added.) Here, it cannot be disputed that the overall reviewable activity for which the CON was granted was the replacement of 100 long-term care beds from an existing facility to a new building to be constructed on the same campus. However, the position of the director is not illogical in that a plan for existing patient care was part of the application for the CON. Since our role on appeal is to accord due deference to the *Page 7 
statutory interpretation of the director, we accept the interpretation of the statute as set forth by the director through the hearing examiner.
 {¶ 20} Resolution of this issue renders moot the need to discuss "implementation," and what that means in terms of the statute. Implementation is not a term of art within ODH. However, to "obligate" a project is a term of art and means the holder of the CON must obtain financing and commence construction within 24 months of the date the CON was granted. (Tr. 289.) In this case, the project had not been obligated at the time of the relocation of the residents, although arguably one could say that part of implementing the project was the closing of the facility and the relocation of the residents. However, in this case, the closing of the facility and the relocation of the residents were precisely the opposite of what MSI had represented in the CON application for its plan of care for the residents.
 {¶ 21} This leads to consideration of whether the relocation of the residents was a failure to conduct a reviewable activity in substantial accordance with the approved application. R.C. 3702.53(C) states that "[n]o person granted a certificate of need shall carry out the reviewable activity authorized by the certificate of need other than in substantial accordance with the approved application for the certificate of need." MSI contends that, in light of the overall scheme of the CON application, the section about ongoing patient care was a miniscule portion of the overall project for which the CON was granted. Moreover, MSI states that the primary purpose of the CON was to examine the need and financial feasibility of constructing long-term care beds in the community, and not the care of the individual residents. While MSI acknowledges that such care is very important, MSI notes that there is another entire section within ODH that is charged with *Page 8 
such responsibility and that it is not the mission of the CON section to take over that function. MSI believes that ODH is holding it to an absolute compliance standard, and for the term "substantial accordance" to have any meaning, minor deviations from the projected activities or financial feasibility of the project must be overlooked.
 {¶ 22} ODH views the change in the plan of care to be of grave concern. Although it comprises only a small section of the application, ODH contends that the plan of care for the residents is a substantial and significant factor in the decision to approve a CON.
 {¶ 23} Once again, we must accord due deference to the agency's interpretation of its own rules and statutes. Ohio Adm. Code 701-12-23.2(C) requires a feasible plan for the residents living in a facility proposed to be relocated through a CON application. The fact that such a regulation exists as part of the CON application process supports the contention that the state of Ohio has a compelling state interest in the treatment of Ohio citizens residing in long-term care beds, particularly when a major disruption may occur if the beds are to be relocated or replaced.
 {¶ 24} The real question, however, is whether the relocation was a substantial deviation from the plan or something less than a substantial deviation. With respect to this question, MSI's position ignores the fact that, under the revised plan, the residents had to relocate not once, but twice, to be able to live in the new facility, and the way in which they were notified of the closing was admittedly regrettable. Akiva Wagschal testified that he did not authorize such actions; however, some residents received notices erroneously entitled "Eviction," and the receipt of those notices led to complaints to the ombudsman designated by the Ohio Department of Aging to safeguard the residents' rights in long-term care facilities. In other words, relocation and closing operations *Page 9 
comprised a substantial change to what had been approved in the CON application concerning continued operation and continued occupation by the residents. In fact, the decision to relocate and close was exactly the opposite of what MSI represented in its application. In sum, the director did not err as a matter of law in finding that the relocation of residents was a reviewable activity, and MSI failed to conduct this activity in substantial accordance with the plan of care they had set forth in the CON application.
 {¶ 25} We now turn to the penalty phase of the proceedings. As a result of its actions, MSI had its CON withdrawn, it was assessed a civil penalty of $207,355, and a three-year moratorium was placed upon MSI with regard to applying for any new CON.
 {¶ 26} R.C. 3702.52(F) permits the director to withdraw a CON, and R.C. 3702.54(A) sets forth applicable rules in assessing civil penalties for the violation of R.C. 3702.53(C). If a person has violated R.C. 3702.53, 3702.54(A) states, in pertinent part:
 The director shall impose a civil penalty on the person in an amount equal to the greatest of the following:
 (1) Three thousand dollars;
 (2) Five per cent of the operating cost of the activity that constitutes the violation during the period of time it was conducted in violation of section 3702.53 of the Revised Code;
 (3) Two per cent of the total capital cost associated with the implementation of the activity.
 In no event, however, shall the penalty exceed two hundred fifty thousand dollars.
R.C. 3702.54(B) authorizes the director to impose a moratorium on new applications for a CON, but the moratorium cannot exceed three years. *Page 10 
 {¶ 27} We can find no legal basis to change the withdrawal of the CON or the moratorium on new applications. The director was within his discretion to impose those penalties. However, as a matter of law, we must vacate the civil penalty of $207,355. In his order imposing the civil penalty, the director identified the activity that constituted the violation as relocating the residents and closing the existing facility contrary to the approved CON application. The director determined that option two, five percent of the operating cost was inapplicable because the closed facility and the proposed facility were not operational, and therefore there was no operating cost associated with the reviewable activity. Instead, the director selected option three and calculated the civil penalty by applying two percent of the total capital cost of the proposed project, which was $10,367,754. This is error as the statutory formula speaks of two percent of the total capital cost associated with the implementation of the activity. The director cannot have it both ways. Either the activity is the relocation of the residents, or the activity is the construction of the new facility. The closing of the facility and relocation of the residents are not capital projects, and therefore there were no capital costs associated with their implementation. Because the total capital cost is zero, the civil penalty of $207,355 is inapplicable and contrary to law.
 {¶ 28} Based on the foregoing, we affirm in part and reverse in part. The finding of a violation of R.C. 3702.53(C) is affirmed as well as the withdrawal of the CON and the three-year moratorium on new applications. The imposition of the civil penalty of $207,355 is vacated and the matter is remanded to the director to impose the required penalty of $3,000.
Judgment affirmed in part and reversed in part; case remanded withinstructions. *Page 11 
 PETREE and SADLER, JJ., concur. *Page 1