RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANTHONY GOOCH,

        *Plaintiff-Appellee,*

    *v.*

LIFE INVESTORS INSURANCE COMPANY OF
AMERICA and AEGON USA, INC.,

        *Defendants-Appellants.*

Nos. 10-5003/5723

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 07-00016—William J. Haynes, Jr., District Judge.

Argued: July 22, 2011

Decided and Filed: February 10, 2012

Before: MOORE and KETHLEDGE, Circuit Judges; MARBLEY, District Judge[*].

_____

## COUNSEL

**ARGUED:** Markham R. Leventhal, JORDEN BURT LLP, Miami, Florida, for Appellants. Thomas O. Sinclair, SINCLAIRWILLIAMS, LLC, Birmingham, Alabama, for Appellee. **ON BRIEF:** Markham R. Leventhal, Richard J. Ovelmen, Julianna Thomas McCabe, JORDEN BURT LLP, Miami, Florida, for Appellants. Thomas O. Sinclair, M. Clayborn Williams, SINCLAIRWILLIAMS, LLC, Birmingham, Alabama, Eric L. Buchanan, ERIC BUCHANAN & ASSOCIATES, Chattanooga, Tennessee, for Appellee.

    MOORE, J., delivered the opinion of the court, in which MARBLEY, D. J., joined. KETHLEDGE. J. (p. 39), delivered a separate writing concurring in part and concurring in the judgment.

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Anthony Gooch ("Gooch") filed a class-action lawsuit against Life Investors Insurance Company and its parent company, Aegon (collectively referred to as "Life Investors"). Gooch alleges breach of contract because Life Investors has begun interpreting the "actual charges" provision of his cancer-insurance policy to mean the charges that the medical provider accepts as full payment from the primary insurer and the insured. Gooch claims that the policy entitles him to be paid the higher "list prices" that appear on his hospital bills before the primary insurer negotiates a lower rate. The District Court for the Middle District of Tennessee granted Gooch's motion for class certification. The district court also issued a preliminary injunction that requires Life Investors to pay Gooch according to his interpretation of the "actual charges" provision. Meanwhile, an Arkansas state court certified a nearly identical class, and the Arkansas Supreme Court has affirmed that class's settlement.

Based on the intervening Arkansas class action, we conclude that this class action is precluded in large part and that class certification, in its current terms, is improper. We hold that we lack jurisdiction to consider the motion to dissolve the preliminary injunction because it is premised on faults in the original injunction, not on new evidence that is different in any relevant way. We therefore **VACATE** the order of class certification but **DISMISS** the appeal of the order that denied the motion to dissolve the preliminary injunction for lack of jurisdiction. We **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Substantive History

Gooch has a cancer-only insurance policy with Life Investors. When a policyholder makes a claim for cancer-related medical expenses, Life Investors pays the policyholder directly. R. 1-1 (Policy, Section C). After a patient submits many claims, the policy pays defined sums of money without reference to the patient's costs, charges, or expenses. *See, e.g., id.* Section E, Part 2, ¶¶ 1–5. Other provisions are less clear. Life Investors pays "the actual charges" for radiation, chemotherapy, blood, ambulances, medical expenses for bone marrow donors, and some patient transportation. *Id.* ¶¶ 11(a), 12(a), 14, 17(b), 18(b), 23. The company pays "actual expenses" for hairpieces for radiation-caused alopecia, some patient transportation, and lodging, meals, and transportation for bone marrow donors. *Id.* ¶¶ 11(c), 17(c), 18(c). The policy covers "Usual and Customary charges" for prosthetic devices and experimental treatment. *Id.* ¶¶ 8, 13. The policy defines "usual and customary" as "[t]he normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided." *Id.* Section A. The other relevant phrases are not defined.

Gooch purchased his policy in 1997. *Id.* at 1–2. In 1999, he was diagnosed with non-Hodgkins lymphoma. R. 90-1 (Gooch Dep. at 25:22–23). Pursuant to a "Premium Waiver" provision in his policy, Gooch applied for and was granted an exemption from making premium payments, which has been in effect since January 10, 2000. R. 298-4 (Gwin Decl. ¶ 12). This exemption will remain in effect so long as Gooch remains "Totally Disabled" as defined in the policy. R. 1-1 (Policy, Section F). From 1999 to 2006, Gooch submitted medical bills relating to his treatments, and Life Investors paid Gooch the full amounts that the medical providers sought for their services—the "list prices."

In May 2006, Life Investors notified Gooch and other policyholders that the company was adjusting its implementation of the policy with regard to the phrase "actual charges." R. 36-2 (Ex. D, Letter). Life Investors informed policyholders that, going

forward, policyholders must submit documents "showing the actual charges being paid to and accepted as payment by the healthcare provider." *Id.* Life Investors refers to this information as "proof of loss," which is distinct from the "'list' prices or 'standard' rates" that often appear in the "informational statements" sent to patients by healthcare providers. *Id.* Life Investors explained in the letter that these informational statements "are not true 'bills' and do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full" and, therefore, "do not reflect the 'actual charges' being incurred and paid." *Id.* Between October 2006 and the issuance of the preliminary injunction, Life Investors paid Gooch only according to the "proof of loss"—that is, the amount that Gooch and/or his primary insurer paid to the medical provider and that the provider accepted as full payment. Gooch disputes this change and argues that he should continue receiving payment for list prices.

**B. Procedural History**

The progress of this case has been slow and serpentine. Two years ago we explained that "the case has languished for more than two years, with numerous partial or complete stays punctuated by random bursts of rulings, orders, and discovery." *Gooch v. Life Investors Ins. Co. of Am.* (*In re Life Investors*), 589 F.3d 319, 322 (6th Cir. 2009). That approach began shortly after Gooch filed his complaint on March 30, 2007. R. 1 (Compl.). He alleged breach of contract for claims submitted in or after October 2006, along with breach of an implied duty of good faith and fair dealing, bad faith, and violation of the Tennessee Consumer Protection Act. *Id.* at 18–25. Gooch also sought a preliminary injunction to prevent Life Investors from paying him only the money that he and his insurers paid to satisfy his medical bills. R. 35 (5/23/07 Prelim. Inj. Mot.); *see also* R. 68 (7/12/07 Amended Prelim. Inj. Mot.). Both parties moved for summary judgment. R. 45 (6/8/07 Summary Judgment Mot.); R. 64 (7/12/07 Summary Judgment Mot.). Gooch moved to certify a class under Rule 23(b)(2). R. 66 (7/12/07 Class Cert. Mot.).

Initially, the district court set a briefing schedule that, among other things, gave Life Investors until August 3, 2007 to respond to Gooch's motion for a preliminary

injunction and gave Life Investors 150 days *after* the district court ruled on Life Investors's motion to dismiss in which to file a response to Gooch's cross-motion for summary judgment. R. 80 (8/3/07 Dist. Ct. Order at 2). On March 6, 2008, however, the district court granted Gooch's motion for a preliminary injunction, denied Life Investors's motion to dismiss, granted Gooch's cross-motion for summary judgment, and certified the class. R. 112 (3/6/08 Dist. Ct. Op.); R. 113 (3/6/08 Dist. Ct. Order). As we observed in 2009, "the court partially relied upon matters outside of the pleadings and the four corners of the policy—the evidence submitted by Gooch—in coming to its conclusions, without having permitted the Company an opportunity to take discovery or offer any contradictory evidence." *In re Life Investors*, 589 F.3d at 324. The preliminary injunction stated that, "within twenty four (24) hours from the entry of this Order, the Defendant Life Investors Insurance Company of America shall restore the amount of the Plaintiff's benefits under their Supplemental Cancer Policy in accordance with the medical billings index as calculated by this Defendant from 1999 to 2006." R. 113 (3/6/08 Dist. Ct. Order).

Less than two weeks later, the district court set aside class certification in a terse handwritten note. R. 122 (3/19/08 Dist. Ct. Order). The district court gave Life Investors forty-five days to respond to the motion for class certification. At a status conference on April 11, 2008, the district court stayed all discovery indefinitely. *See In re Life Investors*, 589 F.3d at 325; *see also* R. 173 (5/2/08 Dist. Ct. Order) (clarifying that, based on the April 11, 2008 status conference, all discovery was stayed indefinitely). In August 2008, at Gooch's request, the district court partially lifted the stay on discovery only for Gooch so that he could conduct several depositions of the defendants. R. 180 (8/21/08 Dist. Ct. Order). On February 27, 2009, the district court denied Life Investors's motion to dissolve the stay on its discovery. R. 236 (2/27/09 Dist. Ct. Order).

On February 19, 2009, when considering the issue of class certification again, the district court denied Gooch's motion for class certification without prejudice. R. 227 (2/19/09 Dist. Ct. Order). The district court also set aside its prior order granting partial

summary judgment for the plaintiffs. R. 219 (2/18/09 Dist. Ct. Order). The district court did not explain either decision. Nevertheless, during a hearing the next month, the district court judge said that he would "treat [his] ruling on the interpretation of the contract in this case [in the grant of partial summary judgment] as the law of the case." R. 243 (3/20/09 Hr'g Tr. at 18:23–24). We observed that this language was "a sort of shorthand legal slang to signal that the [district] court simply does not intend to revisit the issue of contract interpretation," not a "formal" invocation of law-of-the-case doctrine. *In re Life Investors*, 589 F.3d at 325–26. On March 20, 2009, the district court permitted Gooch to file a new motion for class certification, giving Life Investors seventy-five days to conduct limited discovery, including "a [new] five hour discovery deposition of the plaintiff, the regular time for the plaintiff's wife." R. 243 (3/20/09 Hr'g Tr. at 17:16–18, 18:1–11).

Life Investors moved to dissolve the preliminary injunction in March 2009 based on bills that Gooch submitted after the injunction was entered, a deposition of Gooch's wife, a new deposition of Gooch, evidence of Gooch's assets, and declarations about Gooch's bills and the insurance industry. R. 238 (3/10/09 Mot. to Dissolve); R. 239 (3/10/09 Defendant Br.). Three months later, the district court granted Gooch's motion to delay consideration of Life Investors's motion to dissolve until the district court ruled on class certification. R. 307 (7/7/09 Dist. Ct. Order).

On July 24, 2009, the district court enjoined Life Investors from seeking final approval of the proposed class settlement in *Runyan*, based on the All Writs Act, 28 U.S.C. § 1651(a). R. 340 (7/24/09 Dist. Ct. Order); *see also* R. 364 (10/15/09 Dist. Ct. Order). Life Investors "sought interlocutory review of this injunction." *In re Life Investors*, 589 F.3d at 330. On December 17, 2009, this court vacated the injunction because it was not justified under the All Writs Act. *Id.* at 330–32.

Four days after our ruling, based on an emergency motion from Gooch, the district court reinstated partial summary judgment for Gooch, granted class certification, and denied Life Investors's motion to dissolve the preliminary injunction. R. 380

(12/21/09 Dist. Ct. Order).**1**  In finding that Gooch met the requirements of Rule 23(a) and that certification under Rule 23(b)(2) was proper, the district court reasoned that "[t]he Defendants' challenged practice o[f] calculating benefits impacts all class members in a similar fashion." R. 379 (12/21/09 Dist. Ct. Op. at 18). The district court also "conclude[d] that the Defendants' change of policy administration and calculation of benefits under a standard contract presents common questions of law and fact among putative class members" for which Gooch was an adequate class representative. *Id.* at 13. The district court did not mention the Rule 23(b)(3) claims, which Gooch had also brought. *Compare id.* at 17 (labeling section"Plaintiffs' Rule 23(b)(2) Claims") *with* R. 1 (Compl., Prayer for Relief A) (requesting Rule 23(b)(3) class certification).

The district court defined the class to include "[a]ll individuals throughout the United States who are, or between six (6) years from the filing date of this action until the present have been, insured by Cancer Only Policies issued by Life Investors." R. 380 (12/21/09 Dist. Ct. Order) (alteration in original). We granted Life Investors's motion for interlocutory appeal of the class-action certification pursuant to Federal Rule of Civil Procedure 23(f). *In re Life Investors Ins. Co.*, No. 10-501 (6th Cir. June 21, 2009). Life Investors has also sought interlocutory appeal of the district court's denial of Life Investors's motion to dissolve the preliminary injunction.

## C. *Runyan* Settlement

In June 2007, a class action was filed against Life Investors in the Arkansas state court, and subsequently removed by Life Investors to the District Court for the Eastern District of Arkansas. *See Pipes v. Life Investors Ins. Co. of Am.*, No. 1:07-cv-00035-SWW (E.D. Ark. 2008); *see also Hunter v. Runyan*, --- S.W.3d ---, 2011 WL 478594, at *12 (Ark.) (noting parties "had been litigating against each other since June 2007 when the first" of the various class action lawsuits regarding "actual charges" was filed), *cert. denied*, 123 S. Ct. 243 (2011). Subsequent suits by the same counsel were

---

**1**The memorandum opinion, R. 379 (12/21/09 Dist. Ct. Op.), is largely the same as the March 2008 memorandum opinion, R. 112 (3/6/08 Dist. Ct. Op.), which granted the same relief but later was set aside as it related to partial summary judgment and class certification.

ultimately consolidated into the *Runyan* case, which was brought in Arkansas state court. The parties to *Runyan* executed a Class Action Settlement Agreement and filed it with the state court on April 20, 2009. R. 362-2, 362-3 (*Runyan* Class Action Settlement Agreement). Three days later, the *Runyan* court conditionally certified the settlement class and preliminarily approved the settlement. R. 401-7 (4/23/09 *Runyan* Prelim. Approval Order). The class was defined as follows:

> All persons in the United States: (i) who were an insured, covered person, or beneficiary under a Cancer Policy in force at any time from January 1, 2004 through [April 23, 2009]; or (ii) who were an insured, covered person, or beneficiary under a Non-Cancer Actual Charges Policy which was in force [on April 23, 2009], or who submitted a claim for Actual Charges Benefits under a Non-Cancer Actual Charges Policy after the effective date of the 2006 Updated Claims Procedures; or (iii) the surviving spouse or legal representative of such persons defined in (i) or (ii).

*Id.* ¶ 2. Notice was mailed to 250,136 class members and "published twice in *USA Today*." R. 401-2 (12/21/09 *Runyan* Trial Ct. Op. at 19–20). "The Settlement Administrator received approximately 476 requests for exclusion," *id.* at 21, and "eighteen individuals filed objections . . . nine of [which] were subsequently withdrawn," *id.* at 36–37. Gooch opted out of the *Runyan* settlement. *In re Life Investors*, 589 F.3d at 331.

The Arkansas state court issued final approval of the *Runyan* settlement on December 21, 2009—the same day that the district court certified the class in this case (for the second time). *Runyan*, 2011 WL 478594, at *6–7. The Arkansas court estimated the value of the settlement to the class members to be $151,406,757. R. 401-2 (12/21/09 *Runyan* Trial Ct. Op. at 18). The settlement, as approved, awarded $3,500,000 in fees, costs, and expenses to *Runyan* class counsel. R. 401-1 (12/21/09 *Runyan* Trial Ct. Order ¶ 11). The *Runyan* settlement contains a broad release of future suits by class members. *Id.* ¶ 8. The Supreme Court of Arkansas affirmed the *Runyan* settlement on appeal, *Runyan*, 2011 WL 478594, at *2, and the Supreme Court denied certiorari, *Crager v. Runyan*, 132 S. Ct. 243 (2011).

## II.  DISCUSSION

### A.  Motion to Dissolve the Preliminary Injunction

Life Investors appeals the order of the district court denying Life Investors's motion to dissolve the preliminary injunction issued on March 8, 2008.  Life Investors contends that this court has jurisdiction over the interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).  Our interlocutory jurisdiction extends to appeals from district court orders "continuing, modifying, . . . or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).[2]  We do not have interlocutory jurisdiction to review a district court order denying a request for reconsideration of a previously granted preliminary injunction.  *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) ("An order reconsidering or interpreting a preliminary injunction . . . is not appealable" because § 1292(a)(1) omits such orders.); *see also Cherokee Express, Inc. v. Cherokee Express, Inc.*, 924 F.2d 603, 606 (6th Cir. 1991) ("An appeal of right under [28 U.S.C.] § 1292(a)(1) must be taken from the order granting or denying injunctive relief, not from a motion for reconsideration.") (internal quotation marks omitted).  To determine whether an order falls within one of the 28 U.S.C. § 1292(a)(1) categories, or in the alternative is an unappealable motion for reconsideration, we "'look beyond the motion's caption to its substance.'"  *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993)); *see also Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006) (looking to substance to distinguish temporary restraining orders from injunctions).

The power to modify or dissolve injunctions springs from the court's authority "to relieve inequities that arise after the original order."  *Credit Suisse*, 400 F.3d at 1124. Where "significant changes in the law or circumstances" threaten to convert a previously proper injunction "into an 'instrument of wrong,'" the law recognizes that judicial

---

[2]Pursuant to 28 U.S.C. § 1292(a)(1) we also have interlocutory jurisdiction over "orders of the district courts . . . granting . . . injunctions."  The parties do not dispute that Life Investors did not seek direct interlocutory appeal of the grant of the preliminary injunction.

intervention may be necessary to prevent inequities. *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010) (plurality opinion) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (2d ed. 1996) (hereinafter Wright & Miller)). However, such judicial intervention is guarded carefully: To obtain modification or dissolution of an injunction, a movant must demonstrate significant "changes in fact, law, or circumstance since the previous ruling." *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648–49 (2d Cir. 1989); *see also Int'l Union, UAW v. Baretz*, Nos. 97-1763, 97-1936, 1998 WL 449688, at *2 (6th Cir. July 22, 1998) (unpublished opinion) (citing *Twp. of Franklin Sewerage Auth. v. Middlesex Cnty. Utils. Auth.*, 787 F.2d 117, 120 (3d Cir.), *cert. denied*, 479 U.S. 828 (1986)). "[N]ewly discovered evidence can be the basis for a motion to modify," 11A Wright & Miller, *supra*, § 2961; however, the law of this Circuit is clear that to so qualify, the new evidence must not have been "in existence before the original" injunction was issued, *Denley v. Shearson/Am. Express, Inc.*, 733 F.2d 39, 43 (6th Cir. 1984), *superseded by statute on other grounds as recognized in Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275 n.5 (6th Cir. 1990). It is not enough that the party was merely previously unaware of evidence's existence; the evidence must not have been "reasonably discoverable by due diligence during the original proceeding." 11A Wright & Miller, *supra*, § 2961 (citing *Bigelow v. Balaban & Katz Corp.*, 199 F.2d 794, 796 (7th Cir. 1952)).[3]

These principles guide the accurate classification of a motion and, therefore, they inform the question whether a party can file an interlocutory appeal of an order ruling on the motion pursuant to 28 U.S.C. § 1292(a)(1). Thus, in determining whether a motion is a proper request for dissolution and, therefore, immediately appealable under 28 U.S.C. § 1292(a)(1), we consider whether the movant identified changes, either in law or fact, that occurred "between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable."

---

[3]Although at least one court has exempted parties from the "reasonably discoverable by due diligence" requirement, its approach has been criticized as "unduly complicated" and "too hypothetical." 11A Wright & Miller, *supra*, § 2961.

*Favia*, 7 F.3d at 337; *Credit Suisse*, 400 F.3d at 1124 (requiring that the new evidence be "based on new circumstances that have arisen after the district court granted the injunction"); *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 290 F.3d 1250, 1254 (11th Cir. 2002) (permitting appeal "[o]nly if [the motion] contends that changes over time" justify the dissolution of the injunction). Where the movant is merely "a losing litigant" seeking to "attack the [district] court's decree collaterally," 11A Wright & Miller, *supra*, § 2961 (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932)), by "revisit[ing] the initial injunction decision," or "resurrect[ing] an expired time for appeal," 16 Wright & Miller, *supra*, § 3924.2, we lack jurisdiction over the appeal from the district court order.

The previous panel recognized that Life Investors's "motion to dissolve . . . *purports* to be based on 'newly discovered evidence' that would tend to show that Gooch is not facing financial hardship and has submitted false and fraudulent insurance claims." *In re Life Investors*, 589 F.3d at 326–27 n.7 (emphasis added). Because the question was not before us,[4] we did not decide whether the motion was *actually* based on new evidence, much less whether the motion was based on *new* evidence—evidence not in existence before the original injunction was issued. That question is now before us, and we conclude that Life Investors's motion is not based on new evidence and, therefore, is not a proper motion for dissolution.

The evidence that Life Investors presents in support of the motion—Gooch's assets, ongoing business activities, and his wife's salary—was in existence prior to the issuance of the injunction and therefore does not constitute a change in fact. Life Investors does not assert that Gooch's "previously undisclosed assets"—cars and homes—are in fact new assets. Reply Br. at 2 (citing R. 239). Moreover, Life Investors admits that Gooch's firearm business has been in existence since December 2000, concedes that Gooch's wife has been employed with the same company since 1996, and

---

[4]Before us, instead, was the issue of whether the "district court's decision to defer ruling on the Company's motion to dissolve a preliminary injunction" warranted our intervention to provide mandamus relief. *In re Life Investors*, 589 F.3d at 323. We declined to grant the requested relief finding that the district court's stated reason for deferring decision on the motion to dissolve was not improper. *Id.* at 327.

makes no allegations that her salary substantially increased since the issuance of the preliminary injunction. Thus, rather than arguing that circumstances have changed, Life Investors is asserting that evidence previously in existence, but not previously considered by the district court, significantly impacts the preliminary injunction analysis.[5]

We acknowledge that Life Investors is frustrated by the district court's pre-injunction limitations on discovery. However, pre-injunction limitations on discovery cannot transform prior existing, but undiscovered, facts into "new evidence." To contest the limitations on discovery, Life Investors should have immediately appealed from the order that granted the preliminary injunction. Having failed to do so, Life Investors's opportunity to contest the merits and circumstances surrounding the preliminary injunction's issuance has passed. This is even more true given that the previously unknown facts were not actively concealed from Life Investors and reason would have independently counseled in favor of further investigation.[6]

In conclusion, the district court order denying Life Investors's motion, which was styled as a request for dissolution of the preliminary injunction in light of changed circumstances, is in fact an order denying a request for reconsideration of the district court's March 2008 order granting the preliminary injunction.[7] We lack jurisdiction over the appeal from that order because 28 U.S.C. § 1292(a)(1) does not create a

---

[5]Life Investors raises two additional claims of "newly discovered evidence": (1) evidence of Gooch's increased wealth; and (2) evidence of Gooch's false testimony regarding past crimes. First, that the benefits Gooch has received since the injunction show that Gooch now has more money than he did originally is the expected consequence of the injunction. The payments do not show a change in law, fact, or circumstance warranting interlocutory appellate judicial intervention. Second, as explained in Section II.B.4(b), *infra*, we conclude that Gooch's testimony regarding prior crimes was not false, making that supposedly new evidence irrelevant.

[6]For example, when Gooch claimed not to know certain pieces of information, such as his wife's salary, Life Investors was put on notice that further investigation would be useful.

[7]Gooch points out that Life Investors's motion before the district court was untimely, as Rule 59(e) then imposed a ten-day limitation on motions for reconsideration. Although this is true, it is ultimately inconsequential to our jurisdictional analysis. The time bar of Rule 59(e) is not jurisdictional, though it does create an "affirmative defense," which Gooch has properly asserted. *Nat'l Ecological Fund v. Alexander*, 496 F.3d 466, 474–75 (6th Cir. 2007) (terming Rule 59(e) a "claim-processing rule[]"). Nevertheless, because we lack interlocutory appellate jurisdiction over a district court order deciding a motion for reconsideration, the timeliness of the motion before the district court is of no moment to our jurisdictional analysis.

statutory basis for jurisdiction over "[a]n order reconsidering or interpreting a preliminary injunction." *Weight Watchers*, 423 F.3d at 141; *see also Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 n.5 (6th Cir. 1998) ("*Kerr* restricts an interlocutory appeal when a party successively asks for the same relief based on the same facts, then files an appeal that should have been filed at the time of the first decision."). Accordingly, we dismiss Life Investors's appeal from the district court's order denying the motion to dissolve the preliminary injunction for lack of jurisdiction.

**B. Class-Action Certification**

We vacate the class-certification order because the *Runyan* settlement precludes the claims of most class members. While some class members may still have certifiable claims, we decline to decide this issue, as it is not directly before us. Nevertheless, in aid of further proceedings, we consider, and ultimately reject, most of Life Investors's remaining arguments: (1) that *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541 (2011), forbids certification because Gooch requests money damages; (2) that Gooch does not satisfy the Rule 23(a) requirements; and (3) that the bar on one-way intervention applies to mandatory classes. We do not decide whether the differences in state law are stark enough to make certification inappropriate.

**1. Standard of Review and Legal Standard**

"'The district court's decision certifying the class is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559–60 (6th Cir. 2007), *cert. denied*, 129 S. Ct. 608 (2008) (internal quotation marks omitted).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart*, 131 S. Ct. at 2551. "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and must be checked through "rigorous analysis," *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161). Some circuits expressly bar district courts from presuming that the

plaintiffs' allegations in the complaint are "true for purposes of the class motion . . . without resolving factual and legal issues that strongly influence the wisdom of class treatment." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir.), *cert. denied*, 534 U.S. 951 (2001) (internal quotation marks omitted); *see also Elizabeth M. v. Montenez*, 458 F.3d 779, 783 (8th Cir. 2006); *Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offerings Sec. Litig.*), 471 F.3d 24, 41 (2d Cir. 2006). That approach follows from *Falcon*, and *Wal-Mart* has cemented its propriety. Nevertheless it does not apply in all circumstances; it is not always "'necessary . . . to probe behind the pleadings before coming to rest on the certification question,'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160), because sometimes there may be no disputed "factual and legal issues" that "strongly influence the wisdom of class treatment," *Szabo*, 249 F.3d at 675.

When deciding whether to certify the class, the district court acknowledged that Gooch carried the burden of persuasion to show compliance with Rule 23 and that the district court was obligated to "carefully scrutinize" Gooch's request for certification. R. 379 (12/21/09 Dist. Ct. Order at 9). Nevertheless, the district court took plaintiff's allegations "as true" and resolved doubts "in the plaintiff's favor" while conducting what it called "[a] limited factual inquiry into the class allegations, including the deposition of the named plaintiff." *Id.* at 10 (internal quotation marks omitted). This standard is clearly wrong. A "limited factual inquiry" assuming plaintiff's allegations to be true does not constitute the required "rigorous analysis" we have repeatedly emphasized. *See, e.g.*, *Beattie*, 511 F.3d at 560; *Bacon v. Honda of Am. Mfg, Inc.*, 370 F.3d 565, 569 (6th Cir. 2004), *cert. denied*, 543 U.S. 1151 (2005). Nevertheless, we find this error to be harmless. A full review of the district court's opinion shows that the district court based certification on the "affidavits and exhibits that the [c]ourt deem[ed] sufficient." *Id.* at 10. The district court probed behind the pleadings, considering all of the relevant documents that were in evidence. This renders any error in its statement of the law harmless. This is particularly true given that the issues at the core of the certification

dispute are legal and not factual.**8**  We also note that the Eighth Circuit found no reversible error in a similar situation.  *See Cox v. Zurn Pex, Inc.* (*In re Zurn Pex Plumbing Prods. Liab. Litig.*), 644 F.3d 604, 618 (8th Cir. 2011) (finding error harmless even where district court stated that it presumed plaintiff's allegations in the complaint to be true).

### 2. Preclusive Effect of the *Runyan* Judgment

The Arkansas courts have finalized the *Runyan* settlement, while the district court in this case has only certified a class.  Giving full faith and credit to the *Runyan* settlement requires that we vacate class certification.

"[J]udicial proceedings of any court of any . . . [s]tate . . . shall have the same full faith and credit in every court . . . as they have . . . in the courts of [the] [s]tate . . . from which they are taken."  28 U.S.C. § 1738.  A state judgment "entered in a class action like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of § 1738."  *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996).

The district court did not address the full faith and credit issue because the *Runyan* settlement was finalized on the same day that the district court certified this class.**9**  In "special circumstances" we may address sua sponte the defense of res

---

**8**Despite Life Investors's request, we have no occasion to decide the evidentiary standard for factual findings during class certification.  Some circuits hold that a district court, when "deciding whether to certify a class[, must] resolve factual disputes by a preponderance of the evidence," a requirement that Life Investors urges us to adopt.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *cf. In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 32–42 (surveying cases and holding that certification requires more than "some showing" of proof).  The Sixth Circuit uses the "rigorous analysis" requirement, never mentioning whether a "preponderance" standard is appropriate.  The Supreme Court did the same in *Wal-Mart*.  We see no reason to superimpose a more specific standard than the Supreme Court; moreover, the result would not differ in this case because factual issues are not in play.

**9**It is unclear to us why the district court recertified the class when it did.  The district court was aware that the Arkansas state court had preliminarily approved the settlement as of October 1, 2009.  R. 362-2, 362-3 (*Runyan* Class Action Settlement Agreement).  Due to that preliminary approval, six other federal district courts stayed proceedings in similar suits pending the settlement in *Runyan*.  R. 323-9 (Stay Orders).  On December 17, 2009, only four days before the certification order, Gooch filed an emergency motion informing the district court that "[t]he State Court in Arkansas has indicated it will issue an order within days on the Defendants' Motion for Class Certification filed there."  R. 372 (12/17/09 Emerg. Mot. at 1).  The next day, December 18, 2009, this court overturned the district court's order that enjoined Life Investors from seeking a settlement in *Runyan*.  R. 373 (12/18/09 6th Cir. Op.).

judicata. *Ariz. v. Cal.*, 530 U.S. 392, 412 (2000). "Here, the defense of res judicata was not available" before the district court because the *Runyan* settlement had neither been certified nor made final by the Arkansas Supreme Court. *MSI Regency, Ltd. v. Jackson*, 433 F. App'x 420, 430 (6th Cir. 2011) (unpublished opinion). "Now that the state decision has become final, it is appropriate for this Court to respect its conclusions." *Id.* Doing so requires us to consider a purely legal issue that is presented "with sufficient clarity and completeness" in the parties' briefs, which further counsels in favor of us considering it sua sponte on appeal. *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011).

### a. State Requirements

Federal courts must give preclusive effect to a state-court judgment only if the rendering state court would do the same. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). Under Arkansas law,

> [t]he claim-preclusion aspect of res judicata bars re-litigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

*Baptist Health v. Murphy*, --- S.W.3d ---, 2010 WL 3835844, at \*7–8 (Ark. Nov. 11, 2010). When state and federal cases percolate "simultaneously . . . the first forum to dispose of the case" is the forum whose "judgment . . . is binding on the parties." *Id.* at \*8. The parties do not dispute that the *Runyan* judgment is final for purposes of res judicata. *See also Crager v. Runyan*, 132 S. Ct. 243 (2011) (denying petition for writ of certiorari with respect to *Runyan* settlement after settlement was affirmed by the Arkansas Supreme Court). Rather, Gooch contests only the second and third requirements: jurisdiction and good-faith contestation. The Arkansas Supreme Court has disposed of Gooch's arguments, making us certain that Arkansas would give preclusive effect to its judgment.

First, the Arkansas court that certified the *Runyan* class had proper jurisdiction. On the direct appeal in *Runyan*, the Arkansas Supreme Court expressly made this holding, distinguishing both cases on which Gooch now relies. *Runyan*, 2011 WL 478594, at \*9–10 (distinguishing *MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 210 S.W.3d 878 (Ark. 2005), and *UHS of Ark., Inc. v. Charter Hosp. of Little Rock, Inc.*, 759 S.W.2d 204 (Ark. 1988)).

Second, the parties to *Runyan* fully contested the settlement in good faith. The Arkansas Supreme Court held that "the record does not demonstrate that the settlement agreement was reached prior to th[e *Runyan*] suit being filed" because a month and a half passed between filing the complaint and executing the written settlement. *Id.* at \*12. Moreover, "[t]hat settlement negotiations were underway at the time the complaint was filed in [*Runyan*] . . . does not demonstrate that the parties were not adverse." *Id.* at \*13. "[T]here was indeed a history of contentious litigation between these parties," stemming back to June 2007. *Id.* "[E]ven if the general parameters of a settlement had been reached, the fact remains that the parties were adverse and negotiations could have broken down at any time before the written agreement was executed." *Id.* Under Arkansas law, the parties fully contested the settlement in good faith.

Because the Arkansas Supreme Court's opinion in *Runyan* expressly rejected Gooch's arguments, we have no doubt that Arkansas would give preclusive effect to the *Runyan* settlement.

### b. Federal Requirements

To receive full faith and credit, a state-court judgment also must "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer*, 456 U.S. at 481. Gooch argues that the notice to *Runyan* class members and the class counsel's representation were constitutionally infirm. We disagree.

**(1)  Scope of Review**

Life Investors argues that we are not empowered to decide whether the class action settlement in *Runyan* comported with due process.  The company reasons that the state circuit court order that approved the settlement stated that the settlement complied with constitutional due process requirements.  "[T]he scope of collateral due process review" has "become part of an 'open, and hotly litigated question' among courts and scholars."  *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 426 (D.S.C. 2011) (quoting *Hospitality Mgmt. Assocs., Inc. v. Shell Oil Co.*, 591 S.E.2d 611, 618–19 nn.11–12 (S. C. 2004)).  "The question is whether the collateral court is constrained to a limited review, considering only whether the class action settlement court utilized adequate procedures to assure itself that the *Shutts* due process requirements were met, or, instead, may engage in a broader, merits-based due process review."  *Id.*  The Sixth Circuit has not addressed the issue.[10]

We conclude that, in deciding whether to afford the *Runyan* settlement full faith and credit, we may review the substance of whether that settlement complied with the Due Process Clause.  Our prior precedent makes clear that "class members may indirectly challenge the validity of a judgment in a class action by mounting a collateral attack on the adequacy of the class representation."  *Shults v. Champion Int'l Corp.*, 35 F.3d 1056, 1058 (6th Cir. 1994), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002).  That holding flows from the Supreme Court's observation that "a court adjudicating a dispute may not be able to predetermine the res judicata effect of its own judgment."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985); *see also* Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 16:24 (4th ed. 2002) (hereinafter Newberg on Class Actions) ("[T]he potential impact of a class court judgment is not a matter for determination by the deciding court.  The

---

[10]We have previously stated that "[t]he adequacy of representation is a factual finding for the court before whom the class action is pending," although we cannot defer to its decision when "[t]he record before us contains no findings by the [district] court with respect to the adequacy of representation."  *King v. S. Cent. Bell. Tel. & Tel. Co.*, 790 F.2d 524, 530 (6th Cir. 1986).  That rule applies to the *direct* appeal of a *federal* class action, not the collateral assessment of another class.  In effect, *King* was clarifying the standard of review of the district court, not the scope of review of a prior judgment that both the district court and appellate court must conduct.

res judicata effect of a class judgment can only be determined by a later court in light of a specific controversy."). The propriety of collateral attack in this context has a long history in Supreme Court jurisprudence:

> State courts are free to attach such descriptive labels to litigations before them as they may choose and to attribute to them such consequences as they think appropriate under state constitutions and laws, subject only to the requirements of the Constitution of the United States. But when the judgment of a state court, ascribing to the judgment of another court the binding force and effect of res judicata, is challenged for want of due process it becomes the duty of this Court to examine the course of procedure in both litigations to ascertain whether the litigant whose rights have thus been adjudicated has been afforded such notice and opportunity to be heard as are requisite to the due process which the Constitution prescribes.

*Hansberry v. Lee*, 311 U.S. 32, 40 (1940). It is incumbent upon us to apply the same scrutiny to state-court judgments that the Supreme Court would apply. Even though reconsidering whether the class judgment complied with the due process clause may not promote judicial "efficiency" or protect the "finality" of the original judgment, *Gough v. Transam. Life Ins. Co.*, 781 F. Supp. 2d 489, 505 (W.D. Ky. 2011), it is a due-process imperative that we are not free to ignore.

This approach, exemplified in *Shults*, is consistent with most circuit courts' views. *See Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 257–59 (2d Cir. 2001) (citing consistent holdings from the Fifth, Seventh, and Eleventh Circuits), *aff'd in relevant part by an equally divided court*, 539 U.S. 111 (2003). We are not persuaded by the divided decision by a panel of the Ninth Circuit in *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999). *Epstein* interpreted *Matsushita* as implicitly holding that, when a state court says that its decision is entitled to res judicata, the state decision conclusively satisfied federal due process. *Matsushita* says nothing to this effect because the issue that *Matsushita* considered was narrower. The Supreme Court began its opinion by stating that "[t]his case presents a question whether a federal court may withhold full faith and credit from a state-court judgment approving a class-action settlement simply because the settlement releases claims within the exclusive jurisdiction of the federal courts." *Matsushita*, 516

U.S. at 369. Because the issue of compliance with due process was not before the Supreme Court, general statements about the parties being bound by the judgment did not reflect any consideration of collateral due-process challenges. Justice Ginsburg's partial concurrence removed all doubt on this front, explaining that "the due process check on the full faith and credit obligation . . . remains open for consideration on remand." *Matsushita*, 516 U.S. at 389. *Matsushita* did not alter the long line of authority holding that, when we are asked to give full faith and credit to a state-court judgment, we retain the power to decide whether the judgment was consistent with the Due Process Clause. *See* 18A Wright & Miller, *supra*, § 4455 (explaining that a prior, vacated decision in *Epstein* "was a strong statement of the traditional view"—that a person can be deprived of "an individual day in court . . . only with great care and only within narrow limits"—while the final *Epstein* opinion is "a new vision" that "must confront many problems").

We also find inapplicable the Third Circuit's decision in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141 (3d Cir. 2005). The holding in that case was limited to circumstances in which "the adequacy of the representation of th[e absent] class member" was "litigate[d] and determine[d]." *Id.* at 146. The passing rubber-stamp reference in the opinion of the Arkansas circuit court—and the silence by the Arkansas Supreme Court—hardly meets this standard.

Finally, Life Investors contends that Gooch lacks "standing" to raise due-process challenges to the *Runyan* settlement. However, Life Investors is confusing standing with the requirements of Rule 23. "Once [a plaintiff's individual] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *see also* Newberg on Class Actions, *supra*, § 1:2 ("[T]he Supreme Court requires that a class representative must have individual standing to establish a case or controversy with defendants, and then the plaintiff can represent a class under procedural Rule 23 if the plaintiff can show that his

or her individual claims raise issues that are common to a class, and thus the plaintiff's claims are typical of the class."). Life Investors does not contest that Gooch generally has standing to establish a case or controversy with Life Investors regarding the correct interpretation of "actual charges." Rather, the present dispute among the parties is whether Gooch can satisfy the requirements for class certification pursuant to Rule 23 in relation to that controversy. Because Life Investors raises the issue of the preclusive effect of the settlement as a bar to class certification, Gooch, as the individual asserting the capacity to represent the interests of the proposed class, is most certainly properly situated to wage a defense by asserting that the settlement notice violated due process.[11] Consequently, we consider the merits of this question.

## (2)  Merits

### (a)  Notice

The notice that *Runyan* class members received complies with federal constitutional requirements. "The Due Process Clause . . . gives unnamed class members the right to notice of the settlement of a class action. To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'"[12] *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008) (quoting *Karkoukli's Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)). "The notice should describe the action and the plaintiffs' rights in it." *Shutts*, 472 U.S. at 812. Due process "does not require the notice to set forth every ground on which class members might object to the

---

[11]In a related case, one district court referred to a similar problem as a question of standing, holding that the plaintiff lacked "standing to [protect] the due process rights of the absent class members in *Runyan*, because he opted out of the settlement and he was not affected by any alleged due process violation in *Runyan*." *Lindley v. Life Investors Ins. Co. of Am.*, Nos. 08-CV-0379-CVE-PJC, 09-CV-049-CVE-PJC, 2010 WL 944180, at *3 (N.D. Okla. Mar. 11, 2010) (unpublished opinion). The analysis in *Lindley* is not persuasive, however, because the two cases it cites are not on point. *Walker v. City of Mesquite*, 858 F.2d 1071, 1074 (5th Cir. 1988), dealt with unnamed class members challenging a consent decree on direct appeal, not unnamed class members responding to a defense of preclusion that has been raised in a subsequent case. *Garcia v. Bd. of Educ.*, 573 F.2d 676, 679–80 (10th Cir. 1978), prevented unnamed class members from collaterally attacking a class judgment because they were adequately represented and did not raise questions of notice.

[12]*Wal-Mart*, like cases before it, left open the question whether class actions that are *not* predominately for money damages must afford notice in order to comply with the Due Process Clause. 131 S. Ct. at 2559. The opinion described the requirement as a "serious possibility." *Id.* We assume, for purposes of this case, that notice is required. In any event, this case does not present a constitutional violation.

settlement."**13** *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007). "All that the notice must do is 'fairly apprise . . . prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)); *accord Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007) ("[T]he class members' substantive claims must be adequately described and the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." (alteration omitted) (internal quotation marks omitted). When a class has settled its claims, "[t]he contents of a . . . notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing," Newberg on Class Actions, *supra*, § 8:32, and "information [about] the class members' right to exclude themselves and the results of failure to do so," *id.* § 8:33. "A proposed notice that is incomplete or erroneous or that fails to apprise the absent class members of their rights will be rejected as it would be ineffective to ensure due process." 7B Wright & Miller, *supra*, § 1797.6.

Gooch contends that the settlement notice given by Life Investors was misleading. The relevant section of the notice states as follows:

> The Company will be required to pay all claims for Actual Charges Benefits consistent with the definition of "actual charges" as the amount legally owed to the provider, which is consistent with the current definition of "actual charges" in Section 38-71-42(A) of the South Carolina Code and similar laws in Oklahoma, Georgia, and Texas. The parties expect this to confer a substantial benefit on the Class by lessening the amount and frequency of future premium increases.

R. 437-13 (5/14/09 *Runyan* Notice at 7). Gooch points out that the notice omits the fact that, before the notice was mailed, at least one court had held that the South Carolina

---

**13**While this statement and the next quotation from Newberg on Class Actions are specific to Rule 23, that rule requires no less than the Due Process Clause.

statute did not retroactively apply to policies that had been issued before the statute's effective date—June 4, 2008. *See Ward v. Dixie Nat'l Life Ins. Co.*, No. 3:03-3239-JFA, slip. op. at 7 (D.S.C. Aug. 12, 2008), *aff'd*, 595 F.3d 164 (4th Cir. 2010). We acknowledge that the omission of this fact might influence a person's decision about whether to opt out of the class.[14] *Hege*, 780 F.2d at 429–31 (holding that the *Runyan* notice violated the Due Process Clause because it was materially misleading). In our view, however, the notice was not so misleading that it failed to apprise potential class members of their rights and deprived them of "minimal procedural due process protection." *Shutts*, 472 U.S. at 811. The fact that some states did not have statutes favoring Life Investors in place at the relevant time does not compel the conclusion that Gooch's interpretation would have prevailed in each suit. Ultimately, even if statutes were not controlling, in at least some cases the fate of claims was in the unpredictable hands of a jury. *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) (remanding for jury trial after determining the term "actual charges" to be ambiguous). Pursuit of litigation thus entailed significant risk and expense, and it is these considerations that led the parties to settle. That class members might succeed on the merits of their claims was not a misleading omission that made the notice inadequate. R. 437-13 (5/14/09 *Runyan* Notice at 6). The notice gave potential class members an address, phone number, and website with which to "obtain[] more information" about the proposed settlement. *Id.* at 12. For these reasons, the notice met the due-process baseline.

---

[14]Gooch further contends that the notice also omits reference to other adverse rulings against Life Investors and other similarly situated defendants. However, the decisions that Gooch cites in support of this contention all post-date the issuance of the settlement notice. *See* Appellee 10-5723 Br. at 60 n.25. While we are aware that two circuits decided that the term "actual charges" was ambiguous prior to the issuance of the settlement notice, these opinions do not promise that all or most plaintiffs would ultimately be successful in obtaining relief. *See Ward v. Dixie Nat'l Life Ins. Co.*, 257 F. App'x 620, 626–27 (4th Cir. 2007) (remanding for entry of summary judgment in favor of plaintiff because ambiguous terms are construed in favor of the insured under South Carolina law); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) (remanding for finding of fact by jury as to meaning of ambiguous term). Accordingly, this additional argument does not impact the outcome of our analysis.

### (b) Adequacy of Representation

"[T]he adequacy of the class representation" is another basis on which "class members may indirectly challenge the validity of a judgment." *Shults*, 35 F.3d at 1058. "Exploration of individual settlements before filing of a class action is commendable and will not adversely affect a determination of adequate representation in a subsequently filed class action." Newberg on Class Actions, *supra*, § 11:4.

Gooch's contention with regard to the adequacy of representation is that the settlement was the product of collusion and was not contested in good faith. His primary concern is an alleged pre-litigation agreement in which counsel for the parties agreed to utilize the state-court settlement process as a means of binding absent class members. Although we are not certain of its content, the record confirms the existence of some initial agreement:

> After several . . . months of negotiations, in early March of 2009, the Company and Plaintiffs' Counsel reached a preliminary understanding on the major terms of a class action settlement, subject to completion and execution of a comprehensive settlement agreement. On March 13, 2009, Plaintiffs' Counsel filed a Class Action Complaint in the *Runyan* action which consolidated the claims of all plaintiffs in the Related Cases, which included four class actions and two individual actions pending in Arkansas, Mississippi, Michigan, and Louisiana.

R. 406-15 (Adams Decl. ¶ 6); *see also* R. 323-4 (Leventhal Decl. ¶¶ 6–7) (confirming that the parties reached a preliminary settlement before *Runyan* was filed). The settlement was "finalized" shortly thereafter on April 17, 2009 and filed with the court on April 20, 2009. R. 323-4 (Leventhal Decl. ¶ 9). Based on the evidence about the initial agreement, we disagree with the Arkansas Supreme Court's conclusion in *Hunter* that there was no evidence of agreement prior to filing a complaint in *Runyan*.

In large part, what troubles Gooch about the prearranged agreement is the $3.5 million fee that class counsel in *Runyan* received. The Class Action Settlement Agreement provides a "clear sailing" provision, which "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long

as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). The clauses "are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.3 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000). The provision in the *Runyan* agreement stated:

> Class Counsel agrees to make an application to the Court for an award of attorneys' fees and costs in a total amount not to exceed $3,500,000.00, and Class Counsel agrees not to seek or accept any award exceeding such amount. Provided such fee and cost award does not exceed $3,500,000.00, the Company shall not object to such application and shall pay the attorneys' fees and cost award made by the Court in the Final Order and Judgment . . . .

R. 362-2 (*Runyan* Class Action Settlement Agreement ¶ 10). Courts have expressed mixed views about the relationship between clear-sailing provisions and adequacy of representation. In *Malchman v. Davis*, the Second Circuit said that, "where . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems . . . that an agreement 'not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." 761 F.2d 893, 905 n.5 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986), *abrogated on other grounds*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997). Other judges have been less impressed with clear-sailing provisions. In the view of a concurring judge in *Malchman*, such a "clause creates the likelihood that plaintiffs' counsel, in obtaining the defendant's agreement not to challenge a fee request within a stated ceiling, will bargain away something of value to the plaintiff class." *Id.* at 908 (Newman, J., concurring). Another danger is that "the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 520 (holding that courts should "scrutinize" fees requested pursuant to clear-sailing agreements to see whether they "are fair and reasonable").

If the *Runyan* settlement was finalized before the *Runyan* case was filed, then this fee provision was also finalized in advance. In that case, argues Gooch, "*Runyan*

counsel had no motivation at any time during th[e] proceeding to become even minimally adversarial to the Company." Appellee 10-5723 Br. at 63. On this point, the evidence is mixed. Once filed, Life Investors's attorney said that the case was "before [the Arkansas court] essentially [as] a procedural matter." R. 406-10 (4/23/09 Hr'g Tr. at 6:16–17). But the thrust of the attorney's presentation was that the parties had been litigating, "from time to time . . . at each other's throats," since "June of 2007, when the first of the[] cases was filed" and, at long last, they had arrived at a settlement. *Id.* at 6:1–4. An attorney for the plaintiffs in *Runyan* said that "[t]his case was not finished in terms of an agreed-upon settlement until, I want to say, March or February of 2009," which would have been before the case was filed. R. 406-16 (11/9/09 Hr'g Tr. at 45:6–8). The attorney described "six or seven months of pretty hard-fought negotiations" in *Runyan*, *id.*, and "really fairly unpleasant, noncordial litigation with defense counsel for now about two and a half years," *id.* at 43:14–16.

The language about the "agreed-upon settlement" being "finalized" before *Runyan* was filed does not convince us that class counsel provided constitutionally inadequate representation for absent class members. Taken as a whole, the evidence suggests that at worst the parties had come to preliminary agreement on some of the major terms of a proposed settlement before the suit was filed. This is not, however, evidence that the cap on attorney's fees was pre-decided or that counsel engaged in collusive and adverse actions in connection with this fee amount. Attempts to settle before filing a lawsuit do not always demonstrate collusion. Similarly, not every "clear sailing" provision demonstrates collusion. We find collusion particularly unlikely in this instance where the "clear sailing" provision caps attorney compensation at approximately 2.3% of the total expected value of the settlement to the class members. The "majority of common fund fee awards fall between 20% and 30% of the fund." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (internal quotation marks omitted). The quick settlement in *Runyan* seems likely the result of the already-protracted history of litigation between the parties—a history that evidences adversity to such degree that we have serious doubts that plaintiff's counsel subsequently engaged in collusion with its longstanding adversary. On this basis, we conclude that

the *Runyan* class counsel were not so inadequate that they fell short of federal due-process requirements.

### c.  Extent of Overlap

Having determined that the *Runyan* settlement carries preclusive effect under state law and complies with the federal due-process requirements for full faith and credit, we must now consider the settlement's relationship to Gooch's request for class certification.  "Gooch has opted out of the [*Runyan*] settlement.  Thus, it is impossible for the *Runyan* settlement to affect Gooch's rights or claims."  *In re Life Investors*, 589 F.3d at 331.  Still, the settlement affects Gooch's ability to serve as class representative because it affects the viability of the class.  The *Runyan* class members who settled their claims are "bound by th[e] Final Judgment and by the Settlement Agreement," which "forever released and discharged" Life Investors "from any and all claims and liabilities" relating to the "actual charges" dispute.  R. 401-1 (12/21/09 *Runyan* Trial Ct. Order ¶ 8).  Those *Runyan* class members who settled their claims simply cannot be part of any lawsuit bringing these claims against Life Investors.  Newberg on Class Actions, *supra*, § 16:21 ("If a state court case proceeds to judgment before the class claims, those individual plaintiffs may be excluded from class membership by virtue of their prior judgments.").

The *Runyan* class is not coextensive with the class that the district court certified in this case.  The *Runyan* class includes:

> All persons in the United States:  (i) who were an insured, covered person, or beneficiary under a Cancer Policy in force at any time from January 1, 2004 through April 23, 2009; or (ii) who were an insured, covered person, or beneficiary under a Non-Cancer Actual Charges Policy which was in force on April 23, 2009, or who submitted a claim for Actual Charges Benefits under a Non-Cancer Actual Charges Policy after the effective date of the 2006 Updated Claims Procedures; or (iii) the surviving spouse or legal representative of such persons defined in (i) or (ii).

R. 401-1 (12/21/09 *Runyan* Trial Ct. Order ¶ 3).  The class in the present case includes "[a]ll individuals throughout the United States who are, or between six (6) years from

the filing date of this action until the present have been, insured by Cancer Only Policies issued by Life Investors." R. 380 (12/21/09 Dist. Ct. Order at 1) (alteration in original). Because this class action was filed on March 30, 2007, R. 1 (Compl. at 1), we read this language to include anyone who had a cancer-only policy with Life Investors between March 30, 2001 and today.

Because Gooch cannot represent class members who settled their claims in *Runyan*, the current class certification is invalid to the extent that it overlaps with the *Runyan* class. We cannot foreclose the possibility, however, that Gooch could serve as a class representative for some subset of the present class. It may be possible to carve out groups from Gooch's class whose claims are not barred by *Runyan*—for example, those who opted out of the *Runyan* class and therefore did not have their claims settled. We therefore vacate the order of class certification and remand for further proceedings consistent with this opinion. We resolve the remainder of the issues that the parties have raised because they remain relevant for the class members whose claims are not barred.

### 3.  Declaratory Relief and Rule 23(b)(2) Certification After *Wal-Mart*

The district court certified this class action under Rule 23(b)(2), which permits certification when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Life Investors argues that the Supreme Court's intervening decision in *Wal-Mart* prohibits certification of this class because Gooch also seeks monetary relief. We disagree.

In *Wal-Mart*, the Supreme Court held that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment . . . [or] when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 131 S. Ct. at 2557. The Supreme Court rejected the idea that "'predominance' of a proper (b)(2) injunctive claim" over monetary claims "justif[ies] elimination of Rule 23(b)(3)'s procedural protections" for monetary claims. *Id.* at 2559. The Court reasoned that predominance

of injunctive claims over monetary claims does not "establish[] the superiority of *class* adjudication over *individual* adjudication." *Id.*

Of course, Rule 23(b)(2) certification remains available in other circumstances, including when the plaintiffs seek a declaration about the meaning of a contract. "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551(internal quotation marks omitted) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 48 N.Y.U. L. Rev. 97, 132 (2009)). Resolving a dispute over contract interpretation does that, and is precisely what Gooch asked the district court to do under Rule 23(b)(2). He requested that the district court certify a "Declaratory Relief Class . . . pursuant to *Rule 23(b)(2) . . . and*, at such time as the Court deems proper, then certify the Restitution/Monetary Relief Sub-Class as a class action pursuant to *Rule 23(b)(3)*." R. 1 (Compl., Prayer for Relief A) (emphasis added). He explicitly asked the court to enter a declaratory judgment separate from the request for restitution and monetary damages, which would be the subject of a distinct sub-class certified under a different subsection of Rule 23.[15] *Id.* at Prayer for Relief B, C; *see also id.* ¶¶ 71, 88. He did not "combine any claim for individualized relief with [his] classwide injunction." *Wal-Mart*, 131 S. Ct. at 2558. The point is not simply that declaratory relief predominates over monetary relief or that monetary relief is incidental to declaratory relief. It is that, in this case, declaratory relief is a separable and distinct type of relief that will resolve an issue common to all class members.

Not every class member will have a claim for damages because some presumably did not make a claim for payment after the May 2006 policy clarification. Still, the declaratory judgment will apply to a uniform interpretation of a contract that governs or governed each class member, making Rule 23(b)(2) certification appropriate. "All of the class members need not be aggrieved by . . . [the] defendant's conduct in order for

---

[15]The size of the claim would depend on the difference between the charges for which the policyholder was billed and the amount that Life Investors paid. These calculations would be individually tailored, and very similar to the backpay calculations that the Supreme Court prohibited in *Wal-Mart*. Gooch's monetary claim therefore alleges that the plaintiffs would be "entitled to an individualized award of monetary damages," *Wal-Mart*, 131 S. Ct. at 2557, which now requires Rule 23(b)(3) certification.

some of them to seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." 7AA Wright & Miller, *supra*, § 1775. "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them.'" *Wal-Mart*, 131 S. Ct. at 2557 (quoting Nagareda, 84 N.Y.U. L. Rev. at 132). Because Life Investors interprets the phrase "actual charges" the same way for each policyholder, uniform declaratory relief is appropriate.

This point also disposes of Life Investors's contention that the district court's "piecemeal certification" of a single count of Gooch's complaint "does not materially advance the litigation." Appellant 10-5723 Br. at 53.[16] We find nothing objectionable about the district court certifying one count of Gooch's complaint, an approach that we have affirmed in the past. *See Beattie*, 511 F.3d at 568. In sum, certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3).

---

[16]Piecemeal certification of a declaratory-relief-only class does not present a problem of preclusion for class members who wish to pursue damages claims. "[A] class action, 'of course, is one of the recognized exceptions to the rule against claim-splitting.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003), *cert. denied after subsequent appeal*, 130 S. Ct. 561 (2009) (quoting 18 Moore's Federal Practice § 131.40[3][e][iii] (2002)). "Pursuant to the same general principle that claim preclusion does not apply to matters that could not be advanced in a prior action, individual actions remain available to pursue any other questions that were expressly excluded from the class action." 18A Wright & Miller, *supra*, § 4455 (citing *Macon on Behalf of Griffin v. Sullivan*, 929 F.2d 1524, 1530–31 (11th Cir. 1991); *Marshall v. Kirkland*, 602 F.2d 1282, 1295–98 (8th Cir. 1979)). *Wal-Mart* expressed concern about preclusion of damages claims, noting that the predominance test that it rejected would have "created the possibility . . . that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from." 131 S. Ct. at 2559. That preclusion is not possible here, where any monetary relief would be certified under Rule 23(b)(3), per Gooch's complaint.

**4. Requirements of Rule 23(a):  Adequacy of Representation and Typicality**

Rule 23(a) permits class actions when a class member demonstrates that the class members are numerous, that the members' claims share common questions of law or fact, that the representative's claims or defenses are typical of the class members' claims or defenses, and that the class representative "will fairly and adequately protect the interests of the class."  Life Investors challenges Gooch's satisfaction of the last two requirements:  typicality and adequacy.  These two requirements "'tend to merge.'" *Wal-Mart*, 131 S. Ct. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13).  For that reason, we address Life Investors's concerns regarding these two requirements jointly according to topic.

**a.  Conflict of Interest Between Gooch and Other Class Members**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  A party may not serve as class representative when, "[i]n significant respects, the interests of those within the single class are not aligned." *Id.* at 626.  "Identity" of interests is "certainly" not required. Newberg on Class Actions, *supra*, § 3.23.  But something stronger than "[s]hared interests" is necessary in the event that a class representative's interests only minimally overlap with class members' interests. *Id.*  The proper test lies between these two extremes.  Although significant conflicts make a plaintiff an inadequate class representative, differently weighted interests are not detrimental. *Cf. id.* § 6.15 ("That not all members of the class may seek or desire the same relief, or may otherwise have disparate interests, will not render a class definition overly broad or defective or bar the certifying of a class action seeking injunctive and declaratory relief, such as one to compel compliance with applicable statutory or other legal standards.") (citing *Swain v. Brinegar*, 517 F.2d 766 (7th Cir. 1975)).  Because few people are ever identically situated, it is easy to paint an image of the class representative's interests as peripherally antagonistic to the class.  That depiction does not make the plaintiff an inadequate representative.

The district court did not abuse its discretion in finding that Gooch's interests do not significantly conflict with the interests of the class members at large. Class members who have filed medical claims in the past or may file medical claims in the future have an interest in maximal payment for those claims. Gooch shares the interest of these class members. However, class members with ongoing policies and without premium waivers also have an interest in manageable premium rates. Life Investors predicts rate increases of 600% if Life Investors is required to gauge "actual charges" according to list prices instead of loss incurred. R. 298-4 (Gwin Decl. ¶ 15); *see also id.* ¶ 21 (estimating yearly premiums of up to $14,251 by 2016). Gooch's situation, says Life Investors, is different. Pursuant to his policy, Gooch enjoys a premium waiver, *id.* ¶¶ 12, 26, which will remain in effect so long as Gooch remains "Totally Disabled" as defined by the terms of his policy. R. 1-1 (Policy, Sec. F). Arguably, Gooch is similarly situated not to the bulk of the class but to the outliers—former policyholders who terminated their policy between 2006 and now who, as a result, cannot have future claims. Like Gooch, their interest is only in past payments, not future premiums. In fact, at his deposition Gooch disclaimed any interest in "whether [the] prices [that other policyholders pay] increased or not." R. 277-1 (Gooch Dep. at 148:17–18).

While the parties do not discuss this nuance, our reading of the contract easily convinces us that Gooch must resume premium payments if and when he is no longer "Totally Disabled." Gooch's policy explicitly states that "waiver of Renewal Premiums will end on any Renewal Date upon which the Insured is not Totally Disabled." R. 1-1 (Policy, Section F). Pursuant to the policy's definition of "Totally Disabled," this means that Gooch's premium-payment obligations will resume upon Gooch regaining the capacity to "engage" in his former occupation in a "material" and "substantial" capacity. *See id.* (Section A).[17] Thus, Gooch will be required to resume premium payments as

---

[17]Under the policy, "Totally Disabled" is defined as "[a] person who meets the definition of Total Disability." "Total Disability" is defined as "a person being (a) Unable to perform all of the substantial or material duties of his or her regular occupation during the first two (2) years beginning with the commencement of such sickness or injury; and (b) unable to engage in any employment or occupation for which he or she is or becomes qualified by reason of education, training, or experience after the first two (2) years beginning with the commencement of such sickness or injury; and (c) under the regular care and attendance of a Physician." R. 1-1 (Section A).

soon as his health improves to this baseline level, regardless of whether his cancer is in remission and regardless of whether he continues to receive cancer treatments qualifying for benefits under the policy.  Perhaps the loss that Gooch would incur from paying premiums would be less than his potential gain from being compensated for "list prices." However, if the increase in premium payments is steep enough, it is also possible that any potential gain from being compensated for "list prices" would be eviscerated by the resumption of his premium obligations.  Moreover, if premiums escalate, Gooch may also lose his capacity to maintain his supplemental policy, which is likely of great importance to him given the potential for his cancer to return even after entering remission.  As a result, it is clear that Gooch still has *some* prospective financial interest in keeping his own premiums low.[18]  As of two years ago, premiums on his cancer-only insurance policy are 600% higher than when Gooch purchased his policy in 1997.  R. 298-4 (Gwin Decl. ¶ 13).  Due to Gooch's anticipatory interest in premium control, the district court did not abuse its discretion in finding that Gooch's interests do not, in significant respects, conflict with those of the class.

### b.  Gooch's Credibility

The district court did not abuse its discretion in concluding that Gooch was adequately credible.  "To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."  *Savino v. Computer Credit Inc.*, 164 F.3d 81, 87 (2d Cir. 1998); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727 (7th Cir. 2011).  "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate."  *Pasternak v. Colonial Equities Corp./U.S.A.*, No. H-90-829 (JAC), 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993) (Cabranes, J.) (unpublished opinion); *see also* Newberg on Class Actions, *supra*, § 3:36.

---

[18]In another context, Gooch argues that his cancer is terminal—a point that cuts against his position here, as it could demonstrate a conflict of interest by removing any concern about premium rates. At best, this issue appears to be a factual dispute, and the district court did not abuse its discretion.

Life Investors asserts that Gooch committed insurance fraud in 1993 as part of a conspiracy to steal night-vision goggles from Fort Hood. Gooch was charged with violating the Neutrality Act,[19] but the charges against him were dropped before trial. When asked at his deposition in this case whether he had ever been charged with a crime, Gooch admitted the charge. R. 277-1 (Gooch Dep. at 190:21–194:4). He did not mention that, while testifying at the trial of his codefendants, he admitted facts comprising insurance fraud. *See* R. 356-7 (1/12/94 Trial Tr. at 178:17–182:18). Yet Gooch was not charged with insurance fraud. His failure to volunteer related information to a nonspecific question does little to undermine his credibility. Several other statements and omissions in Gooch's first deposition are dubious: he claimed to own one car when he or his wife owns three; he claimed to have no idea how much income his wife brings in; and he claimed that Life Investors's policy change forced his wife to work overtime, while his wife claims that she worked overtime at her employer's discretion long before the change. In each instance, these issues relate to Gooch's lack of insight to his wife's finances, possessions, and work habits and are not necessarily connected to his credibility. Life Investors does not cite any reason in the record to compel the conclusion that Gooch *must* have been aware of these facts. Nor does Life Investors convince us that the interests of absent class members are in jeopardy as a result of Gooch's credibility. As a result, applying the deferential standard of review applicable to credibility determinations on appeal, the district court did not clearly abuse its discretion in finding that, despite these questions, Gooch is adequately credible to serve as class representative.

### c. Differences in State Law

"Differences in state law" can create "disparate questions undermining class cohesion." *Amchem*, 521 U.S. at 624. According to Life Investors, five states have statutes that require interpreting the phrase "actual charges" according to the amount that

---

[19]The Neutrality Act was a series of laws passed during the 1930s and, today, is a rare basis for prosecution. The Act makes it a crime to "knowingly . . . prepare[] a means for . . . or take[] part in[] any military or naval expedition . . . against . . . any foreign . . . people with whom the United States is at peace." 18 U.S.C. § 960.

the provider accepts as payment in full, unless the insurance policy explicitly defines "actual charges" differently.  The district court did not consider whether state law differed on the contractual issues in this case, or the predicate question whether the laws of different states will apply to the dispute.  Life Investors raises the issue without addressing the conflicts-of-law question.  For both reasons, we do not decide whether differences in state law make this class untenable.

### d.  Motion to Strike

Life Investors appeals the district court's decision to strike the declarations of Glenn Alan Melnick and Dr. Marc Chapman, arguing that their sworn statements as expert witnesses are essential to our decision about whether the class was improperly certified.  Chapman's declaration discussed the need for individualized review to discern what damage each policyholder suffered, while Melnick provided background information about list prices.

We exercise supplemental appellate jurisdiction over issues that are "'inextricably intertwined' with another issue that [we have] the independent jurisdiction to consider." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 501 (6th Cir. 2011) (quoting *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 323 (6th Cir. 2010)).  This "requirement is satisfied only if the resolution of the properly appealable issue necessarily and unavoidably decides the non-appealable issue." *Id.* at 503 (internal quotation marks omitted) (quoting *Bates v. Dura Auto Sys., Inc.*, 625 F.3d 283, 286–87 (6th Cir. 2010)).  The motion to strike does not meet this standard.  The testimony relates to certification, but other depositions provide comparable information.  We do not find the declaration of either expert witness essential to the resolution of this appeal.

### e.  Rule 23(a) Summary

In summary, the district court did not abuse its discretion in holding that Gooch's representation is adequate and his claims are typical of other class members.  Gooch has satisfied Rule 23(a).

### 5. One-Way Intervention

The rule against one-way intervention is inapplicable to the district court's order certifying the class under Rule 23(b)(2). The rule against one-way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in that class action. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 546 (1974); *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 430 (6th Cir. 1999) (explaining that the rule against one-way intervention "limits the opportunity of the absent class members to sit on the sidelines without committing to the class"). Here, the district court granted a preliminary injunction, concluding in a predictive sense that Gooch "*should* prevail on his breach of contract claim." R. 112 (3/6/08 Dist. Ct. Op. at 42) (emphasis added).

The preliminary injunction was not a decision on the merits, and it could not have affected any class member's decision about whether to join or leave the mandatory 23(b)(2) class. It is well established that "the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Contrary to Life Investors's argument, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), does not forbid granting preliminary injunctions prior to ruling on class certification. *Eisen* "merely stand[s] for the proposition that . . . the relative merits of the underlying dispute are to have no impact upon the determination of the propriety of the class action." *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 241 (6th Cir. 1994) (quoting *Marx v. Centran Corp.*, 749 F.2d 1536, 1552 (6th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985) (internal quotation marks omitted). *Eisen* precludes preliminary inquiries into the merits for the purpose of deciding whether to certify the class, not for the purpose of deciding whether to grant a preliminary injunction. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006). We acknowledge that "even a tentative decision on the merits" changes the "incentives" of the parties that inform their litigation strategies. *Bieneman v. City of Chi.*, 838 F.2d 962, 964 (7th Cir. 1988). That concern is particularly salient here

because the district court erroneously referred to its ruling as "law of the case" during a later hearing. R. 243 (3/20/09 Hr'g Tr. at 18). We previously held that the district court's use of that phrase was "a sort of shorthand legal slang to signal that the court simply does not intend to revisit the issue of contract interpretation," not a "formal" invocation of law-of-the-case doctrine. *In re Life Investors*, 589 F.3d at 325–26. But if the district court informed the parties that it did not intend to revisit the issue, its preliminary decision still may indeed have changed the parties' incentives. We nevertheless adhere to the well-established principle that a preliminary injunction makes a prediction about the merits ruling and is not itself a merits ruling. Despite the district court's statement, there was ultimately nothing legally stopping the court from revisiting the issue of contractual interpretation leaving class members to weigh the risks and benefits as they would have in any other situation. Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification.

Moreover, we find no support for applying the prohibition on one-way intervention to Rule 23(b)(2) class certifications, in which class members may not opt out and therefore make no decision about whether to intervene. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 558–59 (8th Cir. 1982). In Rule 23(b)(2) cases, holding a "full trial on the merits" prior to certifying a class may be inappropriate for reasons "of judicial economy, and of fairness to both sides." *Id.* at 559 (quoting *S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 275 (4th Cir. 1980)) (internal quotation marks omitted). But there certainly was no full trial, and Life Investors has not demonstrated that other issues of judicial economy or fairness weigh in the defendants' favor. The timing of the class certification—issuing it after the preliminary injunction—was not an abuse of discretion.

**6. Summary of Class Certification**

Most members of Gooch's class have settled their claims pursuant to the *Runyan* settlement and, as a result, class certification is not proper. Nevertheless, we recognize that Gooch may still be able to represent those class members who have certifiable claims and that most of Life Investors's other objections to certification would not foreclose this possibility. *Wal-Mart* does not forbid Rule 23(b)(2) certification for

declaratory relief simply because parties may use that relief as a predicate for monetary damages, particularly when Gooch sought monetary certification under Rule 23(b)(3)—and the district court has yet to rule on that issue. Gooch satisfies the Rule 23(a) requirements because his interests do not conflict with other class members in a way that bars certification and his credibility has not been called into question in any serious way. The bar on one-way intervention does not prohibit preliminary injunctions that precede class certification, nor does it apply to mandatory classes. We do not decide whether differences in state law preclude class certification because the district court has yet to consider the argument.

## III.  CONCLUSION

We **DISMISS** the appeal of the order in which the district court denied Life Investors's motion to dissolve the preliminary injunction because we lack jurisdiction to entertain the appeal. We **VACATE** the district court's certification of the class. The case is **REMANDED** for further proceedings consistent with this opinion.

---

**CONCURRING IN PART AND CONCURRING IN THE JUDGMENT**

---

RAYMOND M. KETHLEDGE, Circuit Judge, concurring in part and concurring in the judgment. My only disagreement with the court's opinion concerns its discussion of Gooch's adequacy and typicality in parts II.B.4(a), (b), and (e) and II.B.6 of the majority opinion. For two reasons, I think that Gooch is an inadequate representative for any remnant of the certified class.

First, Gooch's interests actually conflict with those of the class. Unlike virtually everyone else in the class, Gooch does not pay premiums for his policy. Meanwhile, if Life Investors must reimburse class members for medical expenses based on providers' "list" prices (which virtually no one pays), rather than on the providers' actual charges, then the premiums for classmembers who actually pay them are likely to increase dramatically. Gooch has no reason to care about that, which in my view makes him an inadequate representative of members who do.

Second, Gooch is not a credible representative of any remnant class. His deposition testimony regarding his finances is simply deceptive. Gooch testified that Social Security was his only source of income, that his wife chose to work overtime as a result of his medical expenses, that he and his wife owned one house, and that he and his wife owned one old car. It turns out that Gooch owns a business, that his wife never chose to work overtime, that he and his wife own another house, and that he and his wife own two newer cars in addition to the old one. These discrepancies do not reflect a "lack of insight[,]" Maj. Op. at 34; they reflect a lack of honesty.

I otherwise join the court's thorough and well-reasoned opinion.